IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JOHNNY M. SMITH,

               Plaintiff,

      v.

MICHAEL J. ASTRUE, Commissioner of Social
Security,

               Defendant.

3:11-cv-0012-ST

FINDINGS AND
RECOMMENDATION

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Johnny Smith ("Smith"), appeals the Commissioner's decision denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. The court has jurisdiction under 42 USC § 405(g). For the reasons set forth below, the Commissioner's decision should be affirmed.

1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

On an earlier application for DIB, the Commissioner found Smith disabled within the meaning of the Social Security Act for a closed period from October 1, 2002 (when Smith suffered an on-the-job injury), until December 31, 2005. Admin. R. 67.[1] On January 1, 2006, after medical improvement, Smith was able to return to his past work as a tree faller. *Id* at 75.

In his current application, Smith alleges that he became disabled again on September 22, 2006, when he was a passenger in a motor vehicle accident and injured his back, neck, head, and right eye. Admin. R. 161. As a result, he claims that he is limited to lifting 25 pounds and that squatting, bending, standing for prolonged periods, climbing stairs, and kneeling hurt his back and legs. *Id* at 174. In addition, sitting for prolonged periods hurt his back and reaching hurts his right shoulder. *Id*. He also alleges disability due to blindness in his left eye and mental impairments. *Id* at 161.

## ALJ'S DECISION

The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 CFR § 404.1520. *See Bowen v. Yuckert*, 482 US 137, 140 (1987) (describing the decision-making process). The ALJ found Smith's ability to perform basic work activities limited by the combined effects of a history of spinal fractures, degenerative disc disease, a history of bilateral knee surgery, and intermittent explosive disorder. Admin. R. 19. The ALJ found that, despite his impairments, Smith retained the residual functional capacity ("RFC") to perform the exertional demands of light work, with limitations on stooping, crouching, crawling,

---

[1] Citations are to the page(s) indicated in the official transcript of the record filed on May 24, 2001 (docket #10).

kneeling, climbing, and reaching overhead.  *Id* at 21.  He also has limited depth perception and

peripheral vision due to blindness in the left eye; can understand, remember, and carry out short

simple instructions and perform routine tasks; and should have no contact with the general public

and only occasional, superficial contact with coworkers.  *Id*.  The ALJ elicited testimony from a

vocational expert ("VE") who said that a person of Smith's age, education, work experience, and

RFC could perform the activities required in light, unskilled jobs existing in the national economy,

and identified housekeeping and production assembly jobs as examples of such work.  *Id* at 27, 55.

As a result, the ALJ concluded that Smith was not disabled within the meaning of the Social

Security Act.  *Id* at 28.

## **STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record.  42 USC § 405(g);

*Lewis v. Astrue*, 498 F3d 909, 911 (9th Cir 2007).  This court must weigh the evidence that supports

and detracts from the ALJ's conclusion.  *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007),

citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998).  The reviewing court may not substitute

its judgment for that of the Commissioner.  *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F3d 1194,

1205 (9th Cir 2008), citing *Parra v. Astrue*, 481 F3d 742, 746 (9th Cir 2007); *see also Edlund v.

Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).  Where the evidence is susceptible to more than one

rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences

reasonably drawn from the record."  *Tommasetti v. Astrue*, 533 F3d 1035, 1038 (9th Cir 2008),

quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004); *see also

Lingenfelter*, 504 F3d at 1035.

## FINDINGS

### I.    Claims of Error

Smith contends that the ALJ:  (1) erroneously assessed his RFC by failing to adopt findings from the final decision on his prior DIB claim in accordance with Acquiescence Ruling ("AR") 97-4(9); (2) improperly discounted the credibility of his allegations and testimony, and (3) improperly rejected the opinions of his treating physician, Harry Rinehart, M.D., an examining physician, Paul M. Puziss, M.D., and an examining psychologist, Rory F. Richardson, Ph.D.  As a result of these errors, Smith argues that the ALJ elicited testimony from the VE based on assumptions that did not reflect all of his functional limitations and reached a conclusion that is not supported by substantial evidence.

### II.    Acquiescence Ruling 97-4(9)

In September 2006, the Commissioner issued a final decision concluding that Smith was disabled within the meaning of the Social Security Act for a closed period from October 1, 2002, through December 31, 2005.  On January 1, 2006, due to medical improvement, Smith was able to work.  Accordingly, the Commissioner's final decision found Smith not disabled beginning on January 1, 2006, following the closed period of disability.  Admin. R. 67-68.

In the Ninth Circuit, a final decision by an ALJ that a claimant is not disabled gives rise to a presumption that the claimant continues to be not disabled after the period adjudicated in the decision.  *Chavez v. Bowen*, 844 F2d 691, 693 (9th Cir 1988); AR 97-4(9), 1997 WL 742758, at *2. In order to rebut the presumption, the claimant must prove a change in circumstances indicating an increase in impairment or "greater disability."   *Id*. Smith contends he suffered a change in circumstances after being injured in a motor vehicle accident on September 22, 2006, such that his

current claim cannot be resolved by applying a presumption of continuing nondisability. The ALJ apparently agreed and decided the case based on the five-step disability determination process without applying a presumption of continuing nondisability.

If the claimant rebuts the presumption by showing a change in circumstances, the Commissioner must adopt findings from the prior decision regarding the "claimant's residual functional capacity, education, or prior work experience," unless there is "new and material evidence" related to those findings. *Chavez*, 844 F2d at 694; AR 97-4(9), 1997 WL 742758, at *2. Smith contends the ALJ failed to adopt findings from the 2006 decision regarding his ability to interact with coworkers. According to the RFC assessment in the 2006 decision, Smith was "precluded from any work requiring interaction with the general public" without any limitation on interactions with coworkers. Admin. R. 73. In the current decision, the ALJ found Smith "should have no contact with the general public and only occasional, superficial contact with coworkers." *Id* at 21. Thus, the present RFC assessment includes the mental impairments from RFC assessment in the 2006 decision plus an added restriction regarding contact with coworkers. Accordingly, the ALJ did not fail to adopt findings from the prior decision.

Smith argues nonetheless that the 2006 decision included a finding that his psychological impairments would preclude employment involving even minimal contact with coworkers. The 2006 decision quoted a letter in which Smith's attorney paraphrased the findings of Dr. Richardson, a psychologist, who examined Smith in 2004. The attorney described Dr. Richardson as stating that Smith's "psychological condition would preclude employment that involved even minimal contact with the public or coworkers." Admin. R. 74-75. Smith's reliance on the quoted language is misplaced. The quotation was not a finding by the ALJ, but a description of the facts asserted by

Smith in support of his claim for a closed period of disability.  *Id* at 74.  The ALJ did not adopt Dr. Richardson's opinion regarding the severity of Smith's mental impairments, but found that his assessment of the severity criteria  "deserving of no weight as it is not consistent with or supported by the medical evidence."  *Id* at 72.

Smith has not identified findings of the ALJ from the 2006 decision which the present ALJ failed to adopt.  Accordingly, he has not shown that the present ALJ failed to comply with AR 97-4(9).

## III.    Medical Source Statements

Smith contends the ALJ improperly discounted the medical source statements of Dr. Rinehart, Dr. Puziss, and Dr. Richardson.

### A.        Dr. Rinehart

Dr. Rinehart, a family practitioner, began treating Smith in May 2004.  Admin. R. 442.  As a result of the September 2006 motor vehicle accident, Smith suffered right sided transverse process fractures at L2, L3, and L4, with head, back and neck pain.  *Id* at 316, 323-24.  On discharge, it was expected that his pain would persist for "days to weeks," but would gradually resolve.  *Id* at 316.  In October 2006, a CT scan showed healing changes in the transverse process fractures.  *Id* at 260.  At that time, Smith's treating orthopedist released him to return to light duty work.  *Id* at 252.  Instead of gradual improvement, however, Smith reported to Dr. Rinehart and other providers that he continued to experience neck and lower back pain, headaches, tinnitus, dizziness, and visual impairments.  *Id* at 252, 275-76, 278, 411, 424, 426, 434.

In December 2006, Dr. Rinehart referred Smith to Wan-Jui Chen, M.D., for a neurological evaluation of headaches, frequent dizziness, and neck and back pain which was more right sided.

*Id* at 275-76.  The physical examination was generally unremarkable, other than showing diminished deep tendon reflexes in the legs.  *Id* at 275.  Dr. Chen opined that Smith's dizziness and tinnitus were secondary to postconcussive syndrome and his neck and back pain suggested a myofascial pain syndrome.  *Id* at 176.  Smith did not show focal neurologic deficits.  *Id* at 275.  A subsequent MRI in December 2006 of the cervical spine showed degenerative changes, but no evidence of traumatic injuries.  *Id* at 456.  A brain MRI in January 2007 was also negative, with no findings that would correlate with Smith's headache symptoms.  *Id* at 456, 458.  In February 2007, a lumbar CT scan showed the transverse process fractures continued to heal.  *Id* at 278.

In March 2007, Dr. Rinehart referred Smith to Keyvan Abtin, M.D., for a second neurological evaluation of his continued lower back pain, which was now mostly left sided with occasional symptoms in the right leg.  *Id* at 279-80.  On physical examination, Smith held his neck and back stiff and had limited cervical range of motion.  *Id* at 279.  He had normal muscle bulk and tone and full motor strength in all extremities.  *Id*.  Like Dr. Chen, Dr. Abtin found no neurological abnormalities.  *Id* at 280.

In July 2007, Susan Bottomley, O.T.R., conducted a work capacity evaluation.  *Id* at 373-83.  Smith reported pain in the neck,  head, and lower back, limited cervical range of motion, ringing in the ears, visual impairments, and dizziness.  *Id* at 374.  His neck and head pain were constant, and his lower back pain was exacerbated by activity and prolonged sitting or driving.  *Id*.  Smith also reported numbness and tingling in the legs.  *Id*.  On objective physical capacities testing, however, Bottomley found so many inconsistencies in Smith's presentation that she considered the evaluation findings to be invalid  *Id* at 381.  Bottomley found no objective basis by which to restrict Smith from regular work activities.  *Id*.

Also in July 2007, Todd Lewis, M.D., performed an independent medical evaluation and similarly found Smith's presentation unreliable. Tr. 384-92. He observed that Smith functioned better when not being examined than he did during the examination. *Id* at 386. Dr. Lewis found Smith "had too many inconsistencies and voluntary interference to make the findings of the examination valid." *Id* at 391. He concluded that Smith's subjective complaints and overt pain behavior far outweighed any objective findings. *Id*. Smith's disability presentation was totally out of proportion to expectations based on his diagnoses and the medical findings. *Id*. Dr. Lewis felt Smith had returned to his pre-injury status and had no permanent impairments other than preexisting ones and nonorganic factors. *Id* at 390, 392.

In August 2007, Sean Green, M.D., a neurologist, performed an independent medical evaluation of Smith's postconcussive symptoms, including tinnitus, headache, and visual impairments. Tr. 451-64. Consistent with the evaluations of Bottomley and Dr. Lewis, Dr. Green also noted indications of invalidity, including functional disequilibrium despite well preserved balance, inconsistent marked tenderness to palpation, and poor effort on range of motion measurements. *Id* at 457-58. Dr. Green noted that postconcussive symptoms such as those alleged by Smith typically resolve well within six months after the trauma. *Id* at 459. He said Smith's evaluation was "complicated by considerable functional overlay or symptom magnification which is present throughout the examination." *Id* at 460. He found no objective evidence of a brain injury that would explain Smith's persistent symptoms. *Id* at 459-60. Dr. Green described the history Smith gave as "medically improbable and inconsistent with the medical record." *Id* at 460. He concluded there was no evidence on examination to suggest any permanent impairment, except that

Smith could have some limitation in cervical range of motion based on degenerative changes. *Id* at 459-60.

In August 2007, Dr. Rinehart responded to the findings of Bottomley and Dr. Lewis in a letter directed to an insurance claims adjuster. *Id* at 394-96. He noted that Smith had been vigorous and strong until the motor vehicle accident in September 2006, and afterward was weak and required rest even with light activity. *Id* at 394-05. Dr. Rinehart believed Smith was "100% totally and permanently disabled in his occupation as a timber faller" and was capable of only sedentary work. *Id* at 395. He also disagreed with the validity findings of Bottomley and Dr. Lewis. Id at 395-96.

In January 2008, Dr. Rinehart provided a statement of Smith's functional limitations. *Id* at 734-35. He opined that Smith could lift no more than two pounds occasionally and one pound frequently; walk or stand 45 minutes at a time for a total of four hours during a workday with normal breaks; and sit for a total of four hours in a workday with normal breaks. *ID* at 734. Dr. Rinehart indicated that Smith's primary problem was pain (reportedly 7 on a scale of 10), even with medication. *Id*. He indicated Smith's functional limitations stemmed from the transverse process fractures and head injury suffered in the September 2006 motor vehicle collision. *Id* at 734-36.

The ALJ gave "little weight" to Dr. Rinehart's opinion of Smith's exertional limitations. *Id* at 25. An ALJ can reject a treating physician's opinion in favor of the conflicting opinion of another treating or examining physician, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F3d 947, 956-57 (9th Cir 2002), quoting *Magallanes v. Bowen*, 881 F2d 747, 751 (9th Cir 1989). The ALJ provided a sufficient explanation with specific, legitimate reasoning.

The ALJ found Dr. Rinehart's opinion "inconsistent with the record as a whole" and contradicted by the findings of other medical providers and by Smith's own description of his exertional limitations. Admin. R. 25. For example, Dr. Rinehart's opinion that Smith could lift and carry only two pounds occasionally cannot be reconciled with Smith's admitted lifting limit of 20-25 pounds (*id* at 194), his testimony that he could carry up to 35 pounds (*id* at 49-50), or his demonstrated ability to lift and carry 45 pounds. *Id* at 380, 383. Dr. Rinehart opined that Smith cannot stand or walk for an hour, but Dr. Lewis and Dr. Puziss (as discussed below) found Smith had no limitations on sitting, standing, or walking. *Id* at 383, 758. Dr. Rinehart's opinion that Smith has permanent impairments restricting him to sedentary work cannot be reconciled with the findings of Drs. Lewis, Green, or Puziss, or the physical capacities testing by Bottomley. These medical providers found no reliable evidence of such impairments.

The ALJ specifically relied on an agency reviewing physician, Linda Jensen, M.D., who found Dr. Rinehart's lifting, carrying, standing, and walking restrictions inconsistent with Smith's reported ability to go fishing, hunting, and four-wheeling. *Id* at 25, 732. In March 2008, based on a review of the entire case record, Dr. Jensen opined that Smith could lift and carry 20 pounds occasionally and 10 pounds frequently and stand, walk, or sit for up to six hours each during a normal workday. *Id* at 727, 732-33. Thus, the ALJ's reasons for discounting Dr. Rinehart's opinion are specific and legitimate and supported by substantial evidence.

**B.    Dr. Puziss**

In April 2008, Dr. Puziss, an orthopedic specialist, performed an independent medical evaluation of Smith to evaluate his complaints of continuing spine and knee pain. *Id*. 742-57. He did a thorough and comprehensive review of Smith's medical records and diagnostic imaging studies

and performed a physical examination.  *Id* at 742-55.  Dr. Puziss agreed with Dr. Rinehart that Smith no longer retained the capacity for strenuous physical activities, including work as a timber faller. *Id* at 756.  He found that Smith had no impairment of his knees and that his lumbar pain and limitation in range of motion in the lumbar spine were mostly attributable to a longstanding preexisting lumbar fusion, which was worsened by the motor vehicle accident in September 2006. *Id* at 756-57.  Dr. Puziss opined that Smith had the capacity to perform light work with occasional bending, stooping, and lifting up to 25 pounds and should not twist his back, but found no limitations in sitting or standing.  *Id* at 758.

The ALJ gave the exertional limitations and capacities findings of Dr. Puziss "significant weight," concluding that they were "consistent with the record" and supported the conclusion that Smith was physically capable of performing basic work activities within the light exertion limitation of his RFC assessment.  *Id* at 25.  However, in the RFC assessment, the ALJ did not adopt Dr. Puziss's statement that Smith should not twist his back.  *Id* at 21.

Smith contends this was reversible error because the occupations identified by the VE as suitable for a person with Smith's RFC might require a worker to twist while reaching for materials. Smith does not cite authority, such as the Dictionary of Occupational Titles ("DOT"), indicating that twisting the back is required in the two occupations identified by the VE, nor did he inquire about it during the VE's testimony.  Accordingly, Smith's argument is based on conjecture that the two occupations could require twisting.

Where the ALJ's decision remains supported despite an error, the error is harmless. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F3d 1155, 1163 n4 (9th Cir 2008).  The ALJ's decision remains supported despite the omission of a twisting limitation from the RFC because there is no

evidence that the occupations identified require a worker to twist his back.  Accordingly, the omission was harmless.

**C.    Dr. Richardson**

In March 2004, Dr. Richardson performed a neuropsychological evaluation of Smith.  *Id* at 212-18.  He conducted a clinical interview and mental status evaluation, reviewed Smith's medical records, and administered a battery of tests.  During the interview, Dr. Richardson observed Smith become angry.  *Id* at 215.  Based on clinical observations and Smith's subjective history of difficulty controlling his temper, Dr. Richardson noted that Smith appeared to have an "extremely volatile temper."  *Id*.  Testing showed Smith had average intellectual function. *Id* at 216.  Dr. Richardson noted symptoms of post traumatic stress disorder ("PTSD") with avoidance as the primary coping mechanism.  *Id* at 217.  Smith demonstrated schizoid, avoidant, and depressive personality traits and appeared to have "intermittent explosiveness" and "excessive emotional response" which could be related to an anxiety disorder.  *Id*.  Dr. Richardson recommended a psychiatric evaluation and treatment with anticonvulsant and anxiolytic medications.  *Id*.  Smith did not seek such treatment, however.  Dr. Richardson diagnosed Intermittent Explosive Disorder on a provisional basis, PTSD, and schizoid, avoidant, and depressive personality traits, and assessed Smith's global functioning as 48 in a range indicating serious impairment.  *Id* at 218.

In December 2007, Steven L. Bolgrin, Ph.D., performed a psychodiagnostic evaluation based on a clinical interview and limited testing.  *Id* at 689-95.  Dr. Bolgrin gave a provisional diagnosis of cognitive disorder based on Smith's subjective report of symptoms after the September 2006 motor vehicle accident.  *Id* at 693.  Dr. Bolgrin said it appeared that Smith "was actually lying and/or exaggerating about his emotional symptoms" and recommended third-party corroboration of his

statements. *Id* at 694. Dr. Bolgrin did not offer an opinion regarding Smith's ability to perform work-related activities or his limitations in activities of daily living, social functioning, or concentration, persistence, or pace.

In September 2008, two years after Smith's motor vehicle accident, Dr. Richardson evaluated him again. *Id* at 762-77. Smith reported an increase in symptoms following the accident, including mood swings, depression, pronounced anxiety, anger outbursts, flashbacks, and nightmares. *Id* at 762. Validity test results were mixed, but preponderantly valid. *Id* at 766-67. Dr. Richardson diagnosed Intermittent Explosive Disorder, Depressive Disorder, Anxiety Disorder, and Mixed Personality Disorder with schizoid, avoidant, and depressive traits. *Id* at 76-70. He opined that Smith's global functioning had deteriorated to a level of 40 indicating major impairment in several areas of function. *Id* at 770. Dr. Richardson did not offer an opinion regarding Smith's ability to perform work activities.

The ALJ "generally" accepted the findings and diagnosis from Dr. Richardson's 2008 evaluation, but noted that it did not include an opinion about Smith's limitations in work activities, activities of daily living, or concentration, persistence, or pace. *Id* at 26. Smith contends the ALJ erred by failing to discuss Dr. Richardson's 2004 evaluation, which included findings on the severity criteria, also known as the "B criteria" for presumptively disabling mental impairments enumerated in the regulatory Listing of Impairments. In 2004, Dr. Richardson indicated that Smith had a marked impairment in activities of daily living, an extreme impairment of social functioning, a mild impairment of concentration, persistence, or pace. *Id* at 229. As noted previously, the 2006 decision found Dr. Richardson's 2004 assessment of these severity criteria "deserving of no weight as it is not consistent with or supported by the medical evidence." *Id* at 72. Smith offers no persuasive

reason why the present ALJ was required to revisit the previous ALJ's conclusion. Because the present ALJ considered and accepted Dr. Richardson's 2008 findings and diagnosis, he obviously was not required to explain why he rejected it.

The ALJ considered the medical source statements in context with the record as a whole and reached conclusions that are supported by inferences reasonably drawn from the evidence. Even if the record can be interpreted in a manner more favorable to Smith, the court must defer to the rational findings in the Commissioner's decision. *Batson*, 359 F3d at 1193; *Andrews v. Shalala*, 53 F3d 1035, 1039-40 (9th Cir 1995). Accordingly, the court finds no harmful error in the ALJ's evaluation of the medical source statements.

## IV.    <u>Credibility Determination</u>

At the hearing, Smith testified that he moved to a remote location because he could not get along with his neighbors. Admin. R. 39. He said he could walk for up to 45 minutes at a time on a level surface, stand for five to ten minutes, and sit for up to an hour at a time. *Id* at 48. Although he could lift up to 35 pounds from the ground, he could not hold it long or carry it far. *Id* at 49-50.

The ALJ found that Smith had severe impairments associated with his past spinal fractures, degenerative disc disease, past knee surgeries, and intermittent explosive disorder which combined to cause significant limitations reflected in his RFC assessment. The ALJ restricted Smith's RFC to light exertion with limitations on stooping, crouching, crawling, kneeling, climbing, and reaching overhead, consistent with Smith's assertions. The ALJ also precluded work requiring contact with the general public and restricted Smith to work involving only occasional, superficial contact with coworkers, consistent with Smith's testimony regarding intermittent anger outbursts. *Id* at 21.

However, the ALJ did not believe Smith's claim that his symptoms are so intense, persistent, and limiting that he cannot perform work within these restrictions of his RFC assessment. *Id* at 22.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments and "show that the impairment or combination of impairments could reasonably be expected to (not that it did in fact) produce some degree of symptom." *Smolen v. Chater*, 80 F3d 1273, 1281-82 (9th Cir 1996) (citations omitted) (emphasis in original). Here, the ALJ found Smith's medically determinable impairments could reasonably be expected to produce the symptoms he alleged.

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptom. To reject the claimant's symptom testimony, the ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Tommasetti v. Astrue*, 533 F3d 1035, 1039 (9th Cir 2008), quoting *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995). Absent affirmative evidence that the claimant is malingering, an ALJ's adverse credibility finding must be explained with clear and convincing reasons. *Carmickle*, 533 F3d at 1160; *Lingenfelter*, 504 F3d at 1036. Since the record includes affirmative evidence of symptom magnification, exaggeration, and other indications of malingering, the ALJ need only provide specific, cogent reasons for disbelieving Smith's testimony.

In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional

15 - FINDINGS AND RECOMMENDATION

limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. 20 CFR § 404.1529(c); *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186, at *5.

The ALJ's decision demonstrates that he considered all the evidence relating to the proper factors for evaluating credibility. He discussed the medical evidence at length. Admin. R. 22-26. This evidence showed that Smith's injuries from the motor vehicle accident did not require surgery or extended hospitalization. Neurology evaluations failed to produce findings to support ongoing postconcussive symptoms. Diagnostic imaging failed to show traumatic injury to the brain or cervical spine. The medical evidence showed healing of the lumbar spine injuries and steady improvement in follow up treatment and physical therapy. As noted previously, Smith's treating orthopedist released him for light duty work one month after the accident. *Id* at 252. The ALJ considered this evidence of steady medical improvement unsupportive of Smith's subjective complaints of worsening symptoms. *Id* at 22. Evidence of medical improvement and the absence of medical findings that would be expected in a patient with Smith's complaints undermine the credibility of those subjective complaints. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F3d 595, 599, 600 (9th Cir 1999).

The ALJ considered the medical opinion evidence, as discussed more fully above. Admin. R. 25-26. The ALJ properly took note of the opinions of Drs. Lewis, Green, and Bolgrin, as well as Bottomley, the occupational therapist. Each of these providers examined Smith and noted inconsistencies, voluntary interference, and exaggeration in their evaluations. *Id* at 23. Where a claimant appears to impede the accurate testing of his limitations, an adverse inference can be drawn as to his credibility regarding the severity of his symptoms. *Thomas*, 278 F3d at 959. With the

exception of Dr. Rinehart's opinion, which the ALJ properly discounted, the opinion evidence supports the ALJ's RFC assessment and fails to support Smith's asserted incapacity to perform basic work requiring light exertion.

The treatment records and Smith's testimony indicate that his primary subjective complaint and most limiting condition is pain. Despite this, his only pain treatment has been small doses of over-the-counter Advil. Admin. R. 23, 178, 207, 465. Such minimal conservative treatment supports an adverse inference as to the claimant's credibility regarding the severity of his pain. *Parra*, 481 F3d at 750-51; *Meanal v. Apfel*, 172 F3d 1111, 1114 (9th Cir 1999).

The ALJ noted that Smith claims debilitating psychological impairments, but has never sought mental health treatment. Admin. R. 23. Such an unexplained failure to seek treatment casts doubt on a claimant's sincerity. *Tommasetti*, 533 F3d at 1039; *Bruton v. Massanari,* 268 F3d 824, 828 (9th Cir 2001).

The ALJ also found that Smith engages in independent activities that are not as limited as suggested by his complaints of disabling symptoms and limitations. Admin. R. 22. Smith reportedly lives alone and requires no assistance taking care of himself or his residence, preparing meals, performing all household chores, driving, shopping, mowing, and caring for his dog. *Id* at 47-48, 50, 169-73. He is able to interact appropriately with merchants and health care providers and has routine contact with friends. *Id* at 43-46, 374. The ALJ pointed out that, despite his subjective complaints, Smith remains an active outdoorsman, engaging in bowhunting, fishing, hiking, and driving off-road in the woods. *Id* at 23, 43-44, 374, 700. The ALJ reasonably found Smith's activities inconsistent with the limitations he claimed. Such inconsistencies support an adverse inference as to credibility. *Light v. Soc. Sec. Admin.,* 119 F3d 789, 792 (9th Cir 1997).

The ALJ's credibility determination is supported by inferences reasonably drawn from the record.  His decision provides an adequate basis for the court to conclude that he did not discredit Smith's subjective statements arbitrarily.  Thus, the credibility determination should be upheld.

## V.    <u>Vocational Testimony</u>

At step five of the decision-making process, the Commissioner must show that jobs exist in the national economy that a person having the functional limitations of the claimant can perform. *Yuckert*, 482 US at 141-42; 20 CFR§ 404.1520(e), (f).  The ALJ can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. *Andrews*, 53 F3d at 1043.  Here the ALJ elicited testimony based on Smith's RFC assessment. Admin. R. 55.  The VE testified that light, unskilled occupations, such as housekeeping and production assembly, are not precluded by the limitations in Smith's RFC and represent thousands of jobs regionally and nationally.  The ALJ relied on that testimony to conclude that Smith retained the RFC to perform work that exists in significant numbers in the national economy.  *Id* at 27-28, 55.

Smith contends that the VE testimony was insufficient to support the ALJ's conclusion because the ALJ elicited the testimony with a hypothetical question that did not include a limitation based on Dr. Puziss's opinion that he should not twist his back.  As discussed previously, instead of evidence from the DOT or vocational testimony, Smith's argument is based on nothing but conjecture that the occupations identified by the VE might require a worker to twist his back.  This does not establish reversible error.

Smith also contends he cannot perform the jobs identified by the VE because they require frequent reaching.  The ALJ found Smith could occasionally reach overhead and included this

limitation in the hypothetical question to the VE. *Id* at 21, 55.  The VE testified that a person with this limitation could perform housekeeping and production assembly work. *Id* at 55.  As required by SSR 00-4p, the ALJ inquired whether the VE's testimony was consistent with the information in the DOT, and the VE said that it was. *Id*.  An ALJ is entitled to rely on the VE's expertise to provide more specific information than available in the DOT.  SSR 00-4p, 2000 WL 11765299. The VE's testimony does not conflict with the DOT because the two occupations could require frequent reaching below shoulder level, for instance, but no more than occasional reaching overhead.

The ALJ considered all the evidence of functional limitations and reached an RFC assessment based on the limitations supported by the record as a whole.  The ALJ was not required to incorporate additional limitations he found unsupported by the record. *Batson*, 359 F3d at 1197-98; *Osenbrock v. Apfel*, 240 F3d 1157, 1163-65 (9th Cir 2001); *Magallanes*, 881 F2d at 756-57.

## RECOMMENDATION

The ALJ's determination that Smith failed to prove he was disabled within the meaning of the Social Security Act is based on proper legal standards and supported by substantial evidence in the record as a whole.  Accordingly, the Commissioner's final decision that Smith is not entitled to disability insurance benefits under Title II of the Social Security Act should be affirmed.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due April 6, 2012.  If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 20th day of March, 2012.


s/ Janice M. Stewart_____
Janice Stewart
United States Magistrate Judge